Robert S. STREETMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 69207.

Court of Criminal Appeals of Texas, En Banc.

Oct. 2, 1985.

Michael S. McNeely and Robert S. Coe, court appointed, Rosenberg, for appellant.

R.F. "Bo" Horka, Dist. Atty. and Ben Wagner, Asst. Dist. Atty., Kountze, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

Robert S. Streetman, appellant, was tried and convicted by a jury for intentionally causing the death of Christine Baker by shooting her with a gun while in the course of committing the offense of burglary of her and her husband's residence. See V.T. C.A., Penal Code, Section 19.03(a)(2). It appears from the record that the burglary occurred because rumor had it that the Bakers kept inside of their residence cash money in excess of $150,000, which rumor also had it that such was obtained from illicit drug dealing. In fact, however, the Bakers only kept in their residence cash and cashier's checks totaling a little over $50,000. However, there is no evidence in the record that might reflect that this money was obtained from illicit drug dealing. None of the money was taken during the burglary. When the burglary-killing occurred, Mrs. Baker was alone inside of her residence.

Because the jury answered in the affirmative the special issues that were submitted to it, the trial judge assessed appellant's punishment at death. See Art. 37.071, V.A. C.C.P.

Although the record on appeal leaves much to be desired, we will affirm the trial court's judgment.

Appellant contends in his first ground of error that "[t]he State failed to prove the corpus delicti because it failed to prove that the death of the complainant was caused by the criminal act of another." Appellant also claims in his argument under his ground of error that the evidence is insufficient to show that the death of the deceased was caused by him.

In his second ground of error, appellant contends that the evidence is insufficient to corroborate the testimony of Gary Wayne

Holden, a State's witness who was an accomplice witness as a matter of law.

Because we find them closely interrelated, we will discuss appellant's first and second grounds of error together.

The record on appeal reflects that at the guilt stage of the trial the State presented only four witnesses; Ralph Osborne, the Chief Deputy of Hardin County; Nile Henry Baker, the husband of the victim; Gary Holden, an accomplice as a matter of law witness, who was the "wheelman" for the burglars; and Clint Parr, a person to whom appellant made an admission against interest the day after the offense was committed. Only Osborne and Baker testified concerning the finding of the body of the deceased. Although an autopsy was performed on the body of the deceased, the pathologist who did the autopsy did not testify, nor is his absence accounted for by the prosecution.

After excluding the inadmissible hearsay testimony that came from Osborne, we find from his remaining testimony that after he, Osborne, arrived at the residence of the deceased, he entered the residence, after which he observed the clothed body of the deceased, which was then seated in a leaning position on a sofa with "a large quantity of blood on the right side of her face...." Osborne also observed a circular wound on the right side of her head. Photographs of the deceased depict what is obviously a gunshot wound to her head. Osborne testified that in his opinion the wound he observed on the deceased's head was a contact-type wound to the right temple of her head. To determine the path of the projectile that struck the deceased in her head, Osborne used the "string method" of investigation, from which he was able to deduce that the projectile came from the outside of the residence. In addition to the above, concerning the fact that the deceased was dead at that time, the prosecuting attorney asked Osborne the following question: "Was there any question about whether she was alive or not

[when you saw her]?", and, without any objection, he answered: "No, sir, no question at all." Osborne also testified without objection that in his opinion the complainant had not committed suicide.

Nile Henry Baker, who was at the time of the offense the husband of the victim, testified that on the evening of the day in question he left his residence and went to Beaumont. When Baker left his residence, his wife, who was then in good health, was sitting in front of a television set knitting. After Baker returned home, he found his wife still sitting on the sofa, but he immediately concluded that she had been killed by someone, and then left to seek assistance. Baker was asked the following question by the prosecuting attorney: "At that time, [when he saw his former spouse], and subsequent to that [time], you found out that she was indeed, in fact, dead, is that correct?" Without objection, he replied: "That's correct." Baker was also asked by the prosecuting attorney, "Was there anybody staying [inside of the residence] with you at the time that your wife was killed, sir?" He responded: "No, there wasn't." The record, however, does reflect that another person resided in another place that was on the premises, but there is no evidence that might connect or tend to connect that person with the killing.

The record also reflects that when questioned by one of appellant's trial counsel, without objection, Osborne testified that the appellant "told me personally that he [had] shot the lady."

■ We overrule appellant's first ground of error. This Court has held in the past that to establish the corpus delicti of the crime of murder, or "the body or substance of the crime of murder," the prosecution must establish only two elements, i.e.: (1) the body or the remains of the body of the deceased must be found and identified, and (2) that the death of the deceased was caused by the criminal act of another.[1] *Self v. State*, 513 S.W.2d 832,

---

1. Former Art. 1204 of the 1925 Penal Code provided that "No person shall be convicted of any

grade of homicide unless the body of the deceased, or portions of it, are found and suffi-

834–835 (Tex.Cr.App.1974). *Self* overruled this Court's past requirement that the State also must establish a third element, namely, that the accused must be shown to have been the guilty agent connected with the criminal act, to prove the corpus delicti of the crime.

From the above, although we find that the evidence is not as strong as it could have been, it is nevertheless sufficient to establish the elements of the corpus delicti of the crime of murder.

We also find that it would have been preferable to have had the pathologist testify as to the cause of the death. Notwithstanding the absence of such testimony, we find, based upon the record before us, that the admissible evidence is sufficient to establish that the deceased died as a result of a gunshot wound to the head, and that such occurred as a result of the criminal act of another. Cf. *Boone v. State,* 689 S.W.2d 467 (Tex.Cr.App.1985).[2]

Even though appellant's counsel on appeal does not raise the contention as a separate ground of error, we will next address his contention that the evidence is insufficient to connect the appellant to the crime, and will do so in conjunction with his contention that the evidence is insufficient to show that he is the one who actually pulled the trigger of the gun from which came the deadly projectile.

In deciding the issues, we pause to point out that connecting the accused to the crime of murder is no longer an element of the corpus delicti of the crime of murder, but it is an element of the offense of murder which the State must establish beyond a reasonable doubt. *Self v. State,* supra.

In addition to what we have previously stated, the record on appeal reflects the following:

Appellant neither testified nor gave a written confession to the commission of the crime. The jury, however, heard testimony that appellant had given the police an oral statement that was tape recorded. For reasons not explicated, the tape recording was not placed in the record. The record does reflect that appellant, David R. Kirkindoll,[3] Gary Wayne Holden, and Johnny Johnson were each accused of committing the offense of capital murder. After being arrested, each of the defendants except appellant gave the police a written statement, admitting their complicity in the crime. Only Holden testified for the State, and the trial judge instructed the jury that Holden was an accomplice witness as a matter of law. He also instructed the jurors that before they could convict appellant they had to find that his, Holden's, testimony was corroborated by other evidence that tended to connect appellant with the com-

---

ciently identified to establish the fact of the death of the person charged to have been killed." The present Penal Code does not have this requirement. Thus, the question arises, did the Legislature's failure to bring forward the former provision abolish the first element of the corpus delicti of the crime? Because in this instance the State proved up the body of the deceased, we need not today answer the posed question.

**2.** Also see *Ralston v. State,* 133 Tex.Cr.R. 100, 109 S.W.2d 185 (1937); *Smith v. State,* 104 Tex. Cr.R. 567, 285 S.W. 1094 (1926); *McLaughlin v. State,* 127 Tex.Cr.R. 390, 76 S.W.2d 768 (1934); and *Thomas v. State,* 100 Tex.Cr.R. 114, 272 S.W. 149 (1925); *Smith v. State,* 43 Tex. 643, 647 (1875), where it was held that cause of death may be shown by lay testimony. In *Tellez v. State,* 162 Tex.Cr.R. 456, 286 S.W.2d 154, 155 (1955), this Court stated the following which was applicable to that cause:

Under the State's testimony, it is shown that the deceased was alive before being shot by the appellant, and that after the shooting he was dead at the scene with a bullet wound in his chest. There is no evidence of any other cause for the death of Robert Rivaz, than the shot fired by the appellant. Proof of such circumstances was sufficient to establish that the cause of the death of the deceased was the gunshot wound received from the gun fired by the appellant.

This Court also previously stated the following in *Tellez,* supra:

In homicide cases, the cause of death does not necessarily have to be established by direct evidence but may be proved by circumstances. 22 Tex.Jur. p. 726, sec. 172; *Jennings v. State,* 154 Tex.Cr.R. 211, 226 S.W.2d 126; Branch's Ann.P.C. sec. 1851.

**3.** The court reporter misspelled Kirkindoll's name to read Kirkendall.

mission of the offense. The evidence that was adduced reflects that Holden did not witness what occurred either on the inside or the outside of the residence. This was because he was only the "wheelman" for the burglars, and at all times was situated at some distance from the residence. In exchange for his testimony, but upon recommendation of the prosecuting attorney, Holden received probation; Johnson was granted immunity and Kirkindoll received a sentence of forty-five years' confinement in the Department of Corrections. As noted, Johnson and Kirkindoll did not personally testify during appellant's trial.

▇▇ The law is clear: Where an accomplice witness as a matter of law testifies against the accused, and the sufficiency of the evidence is challenged, in making that determination, this Court invokes and applies the rule of law that it will eliminate the evidence of the accomplice from consideration and then examine the evidence of other witnesses to ascertain if there is any inculpatory evidence or evidence of an incriminating character which connects the accused with the commission of the offense; if there is such evidence, the corroboration is sufficient; otherwise, it is not. Art. 38.14, V.A.C.C.P.; *Rice v. State*, 587 S.W.2d 689 (Tex.Cr.App.1979); *Paulus v. State*, 633 S.W.2d 827 (Tex.Cr.App.1982). In this instance, but because of the way the appellant's case was defended by trial counsel, our task in showing how appellant was connected to the commission of the offense, as well as resolving the sufficiency of the evidence, has been made easy.[4]

Probably the most single damaging piece of evidence against appellant was adduced by one of his trial counsel. The record reflects the following:

Q (By Mr. Coe): Well, why is it enough to try Streetman (the appellant), then? All you got against Streetman is what's in those statements (of Streetman and the co-defendants) and all, and that's

enough to try and ask for his death. I mean, what is lacking to the others that they wouldn't at least get life or something?

A (By Osborne): Robert Streetman told me personally that he shot the lady. . . .

Probably the second most damaging piece of evidence came from Clint Parr, who was not involved in the commission of the offense. Parr testified that on the evening when the killing occurred, appellant came to his residence and told Parr that "he wanted an alibi for a few hours that Friday afternoon, that evening [for something he had done]." The next day, appellant told Parr that "he would have had some money if things would have gone right for him last night." Parr asked appellant what had happened and appellant responded that "he'd shot a woman."

We have previously stated that although Holden was not a witness to the burglary and murder that were committed, his testimony nevertheless puts appellant at the scene of the crime.

▇▇ We find that the independent evidence outside of the accomplice Holden's testimony that the State presented to the jury is clearly sufficient to corroborate the testimony of the accomplice witness Holden. We also find that the evidence would have warranted any rational trier of fact to have found beyond a reasonable doubt that appellant was the guilty agent who caused the death of the deceased. *Richardson v. State*, 600 S.W.2d 818 (Tex.Cr.App.1980); *Easley v. State*, 564 S.W.2d 742 (Tex.Cr. App.1978); *Paulus v. State*, supra.

Appellant's second ground of error, that "[t]he court committed reversible error by denying appellant's motion for an instructed verdict as prescribed by Tex.C.C.P.Ann., Sec. 38.14," is overruled.

▇▇ In his third and last ground of error appellant challenges the sufficiency of the evidence to sustain the jury's "yes" finding

---

**4.** Based upon the record on appeal, it appears to us that trial counsel for appellant defended the case on the theory that because appellant's co-defendants were assessed what might appear to

have been relatively light punishments, the jury would not cause appellant's punishment to be assessed at death. If that was their theory, as things turned out, it was totally erroneous.

to the probability special issue that was submitted pursuant to Art. 37.071, Sec. (b)(2), V.A.C.C.P. The law is clear: To support a "yes" answer to the issue, the evidence must show beyond a reasonable doubt that there is a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. In making this determination, the jury is entitled to take into consideration the admissible evidence presented at the guilt stage of the trial, as well as the admissible evidence presented at the punishment stage of the trial.

The facts of this case reflect a senseless murder that was committed in the course of committing another crime for profit. We recognize, of course, the fact that virtually every capital murder involves a senseless killing.

Appellant, who the record reflects was only twenty-two years of age when he committed the killing, did not testify at the punishment stage of the trial. The record also reflects that he was a drug user or abuser of drugs. The only family member to testify for appellant was his sister, who testified that appellant's upbringing left a lot to be desired.

The State presented 19 witnesses at the punishment stage of the trial, which included justices of the peace, a psychologist, school personnel, businessmen, law enforcement personnel from two counties, neighbors, and the accomplice witness.

The psychologist testified that appellant's behavior was instrumentally aggressive, which means that he is a person who does a violent act without provocation and no goal in mind, just does it on impulse for the sheer enjoyment and pleasure of doing it; in sum, a thrill seeker.

Under his ground of error, appellant attempts to have this Court invoke and apply the teachings of *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), to this cause. *Estelle v. Smith*, supra, held that the admission into evidence of a doctor's testimony on dangerousness of the defendant on the above special issue violated the defendant's Fifth and Sixth Amendment rights because he had not been warned of his right to remain silent before a pretrial psychiatric examination was conducted, at which time he had been indicted and was represented by counsel.

From the record before us, *Estelle v. Smith*, supra, has no application whatsoever to this cause. The State, as pointed out by the prosecuting attorney, "chose to be safe rather than risk being sorry and instructed Dr. Willis to confine his testimony to the hypothetical which he did." See *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

The evidence also reflects that enroute to the scene of the crime, appellant stated that "he was going to do something he had always wanted to do, that was shoot another human being." There is no evidence that appellant ever showed any remorse for killing the deceased.

Other witnesses who testified for the State testified, inter alia, that appellant's reputation for being a peaceable and law-abiding citizen was "bad."

The evidence also reflects that although appellant may not have had any prior admissible criminal convictions, he does have a long history of repeated criminal activity. The evidence also reflects that he was guilty of misconduct when confined for this offense. Appellant's prospects for not committing crimes in the future are next to slim and none because the evidence reflects that his propensity to commit crimes is on the incline rather than the decline, i.e., the next crime he commits must be more violent and dangerous than the last crime he committed.

We agree with appellant that predictability of a human being's doing future criminal acts of violence is at best an inartful science. However, and notwithstanding the fact that the record on appeal leaves a lot to be desired, we are able to conclude from the evidence that was presented that the State established beyond a reasonable doubt that there is a probability that appellant would in the future commit criminal

acts of violence that would constitute a continuing threat to society.

Appellant's third ground of error is overruled.

The judgment is affirmed.

CAMPBELL, J., concurs in the result.